### UNITED STATES of America

v.

### Jeffery RAWLINGS, Appellant.

### No. 91-3226.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1992.

Decided Jan. 15, 1993.

---

M. Elizabeth Kent, Washington, DC (appointed by this Court) for appellant.

Peggy Kuo, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before: WILLIAMS, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

On April 24, 1991 Jeffery Rawlings was convicted of possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1), and of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Rawlings challenges these convictions on three grounds. Two are addressed and rejected in an accompanying unpublished memorandum. This opinion addresses the third—whether the trial judge, in charging the jury on the intent element of the crime of possession with intent to distribute narcotics, erroneously omitted language requiring a "bad purpose to disobey or disregard the law". We hold that the omission was proper and accordingly affirm.

\* \* \* \* \* \*

Appellant was stopped by two District of Columbia police officers at approximately 2:00 a.m. on January 12, 1991, after he ran a stop light and two stop signs. When the officers approached his car, they saw the butt of a .38 Browning semiautomatic handgun lying on the passenger seat, partially hidden under a cap. Appellant tried to flee on foot; one of the officers tackled him and the two arrested him. The officers searched appellant and found 29 ziplock bags (17.52 grams) of 90% pure cocaine base in his coat pocket.

The government took a conventional view of this evidence, arguing that it proved Rawlings was an armed narcotics dealer apprehended while transporting his goods. Appellant offered a very different interpretation. He explained on the stand that he had the drugs and gun only because he was returning them on behalf of a misguided cousin to a drug dealer named "New York", who had enticed the cousin into becoming a subordinate.

According to Rawlings's explanation, he noticed in the weeks leading up to January 12 that his cousin, who was unemployed, had a lot of money on hand. In the same general time period someone fired a shot through the bedroom window of his grandmother's house. That incident, along with the cousin's uncharacteristically nervous behavior, prompted a discussion between Rawlings and the cousin during the afternoon of January 11.

The cousin admitted that he had become a narcotics dealer for "New York" and told Rawlings that he wanted to quit his criminal activity. The two men decided that the only way for the cousin to end his involvement was to get the drugs and gun back to "New York." They agreed that if they threw the contraband away or turned "New York" in to the police, "New York" or his confederates might exact revenge,

possibly even against Rawlings's grandmother. They decided that Rawlings, rather than the cousin, would return the gun and drugs, because Rawlings "was the oldest" and therefore "could appeal to the guy."

\*  \*  \*  \*  \*  \*

On the § 841(a)(1) violation, the trial judge charged the jury on the issue of intent in the following terms (so far as relevant to appellant's current claim):

> Now the second element of the offense: The government must prove beyond a reasonable doubt the defendant possessed the cocaine base knowingly and intentionally. You may find the defendant knowingly and intentionally possessed the cocaine base if he did so consciously, voluntarily, and purposely, and not because of mistake, inattention, or accident.
>
> .   .   .   .   .
>
> ... To establish the third essential element of this offense, the government must prove beyond a reasonable doubt [that] the defendant possessed the cocaine base with the specific intent to distribute the cocaine base. The term "distribute" means the actual, constructive, or attempted transfer of a controlled substance. It is not necessary that the government prove the defendant received or would receive money or property in return for the transfer or attempted transfer of a controlled substance.
>
> You are instructed that the specific intent to distribute cocaine base may be inferred from the possession of a quantity of cocaine base larger than needed for personal use. However, you are not required to make this inference. It's up to you to determine whether the facts and circumstances shown by the evidence as a whole justify this inference of specific intent to distribute from possession of a quantity of cocaine base larger than needed for personal use.[1]

Though drawn from three District of Columbia "Red Book" instructions, see *Criminal Jury Instructions for the District of Columbia,* Nos. 3.01, 3.02, 4.32 (3d ed. 1978), the charge omitted language from Instruction 3.01 stating that a

> person who knowingly does an act which the law forbids, *intending with bad purpose either to disobey or disregard the law,* may be found to act with specific intent.

*Id.* (emphasis added). Appellant here argues that this omission—especially omission of the emphasized "bad purpose" phrase—was error. As appellant did not object at the time of the charge (or at the time the judge repeated the charge on intent in response to a question from the jury), we review only for "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure, see *United States v. Evans,* 888 F.2d 891, 894 (D.C.Cir.1989); in fact we find no error at all.

Appellant rightly concedes that there is no automatic entitlement to a "bad purpose" charge, either generally or for crimes requiring proof of a specific intent. See, e.g., *United States v. Pomponio,* 429 U.S. 10, 11, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam); *United States v. Washington,* 705 F.2d 489, 493 (D.C.Cir. 1983) ("evidence of motive ... is not relevant to or probative on the issue of intent" in federal statute proscribing false statements). He argues only that it is required in the special circumstances of this case, specifically because of his testimony that "he merely intended to return the drugs ... to serve the benign purpose of preventing his juvenile cousin from disobeying the law and destroying his family." At the same time, Rawlings also acknowledges that even under his own account, the return of the drugs to "New York" was a

---

**1.** The charge is framed throughout in terms of "specific intent", which some courts have criticized as too general and potentially misleading to a jury. See, e.g., *United States v. Arambasich,* 597 F.2d 609, 613 (7th Cir.1979). The Supreme Court has suggested that a "more useful instruction might relate specifically to the mental state required under [the relevant statute] and eschew use of difficult legal concepts like 'specific intent' and 'general intent.' " *Liparota v. United States,* 471 U.S. 419, 433 n. 16, 105 S.Ct. 2084, 2092 n. 16, 85 L.Ed.2d 434 (1985). No issue is made of the point here.

violation of § 841(a)(1), as it furthered their distribution. Thus his claim, if internally consistent at all, must be that for *this sort* of distribution, § 841(a)(1) requires proof of an additional element—bad purpose.

Rawlings invokes Justice Jackson's observation in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), that in the English common law criminal culpability generally arose only "from concurrence of an evil-meaning mind with an evil-doing hand." *Id.* at 251, 72 S.Ct. at 244. But Justice Jackson was simply drawing a contrast between traditional intent-based crimes and the relatively rare (and comparatively novel) ones of strict liability. The heart of the decision was the Court's reluctance to impute to Congress a decision to dispense with the requirement of intent—there an intent to convert or steal property. Neither the "evil-meaning mind" phrase nor anything in the opinion drew in question the fundamental principle that legal intent is not necessarily the same thing as motive, or claimed that all federal crimes of specific intent should require proof of "bad purpose". Such a rule would contradict the accepted understanding reflected in *Pomponio.*

Appellant also cites *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), which construes the word "willfully" in 26 U.S.C. § 7201's criminal prohibition of "willfully attempt[ing] in any manner to evade or defeat any tax imposed by this title or the payment thereof." *Cheek* followed *United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), in holding that in the tax context the term "willfully" creates an exception to the general maxim that ignorance of the law is no defense to a criminal prosecution. The exception is grounded in the belief that the complexities of the tax laws are so great that Congress should be understood to have "softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses." 498 U.S. at ——, 111 S.Ct. at 609. Clearly the reason for this special exception hardly applies to the bans on distribution of controlled substances. *Cf. Liparota v. United States,* 471 U.S. 419, 433, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985) ("A food stamp can hardly be compared to a hand grenade ..., nor can the unauthorized acquisition or possession of food stamps be compared to the selling of adulterated drugs....").

Second, even if *Cheek* applied, it would not help Rawlings. *Cheek* allows a defense for a taxpayer who believes in good faith, even if unreasonably, that his treatment of some tax issue, say an item of income or a deduction, is lawful. See 111 S.Ct. at 610–13. If it applied to § 841(a) at all, it would exonerate Rawlings if he in good faith believed that cocaine base was not a controlled substance. But Rawlings's claim was quite different—that his participation in the distribution of cocaine was not criminal because he did it for a worthy purpose, the rescue of his cousin. His position is analogous to that of a tax defendant who knows he must include an item of income but excludes it anyway because he wants the tax saving to help a needy relative. *Cheek* would do nothing for such a defendant, despite his good-hearted motive; thus it does not assist appellant's claim that he was entitled to a charge requiring the government to prove that he acted "with bad purpose either to disobey or disregard the law." There was no error in the omission of such a charge.

■ We note that the trial judge considered whether the defendant was raising a defense of duress and concluded, without objection, that he was not. Rawlings's failure to raise the defense is not surprising, for the defense was unavailable. The defense of duress requires a threat of more immediacy and certainty than Rawlings's testimony suggested; a defendant cannot claim duress when he had, but passed up, an opportunity to seek the aid of law enforcement officials. See *United States v. Jenrette,* 744 F.2d 817, 820–21 (D.C.Cir. 1984). To accept defendant's "bad purpose" theory would in effect expand the borders of the duress defense to encompass any criminal act committed for the purpose of extracting the defendant (or in this case, his kin) from a predicament.

\*　　\*　　\*　　\*　　\*　　\*

The judgment below is *Affirmed.*