**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James A. PITTMAN and Judith A. Boyd, Defendants–Appellants.**

**Nos. 95–2651, 95–2652.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1996.

Decided April 22, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 23, 1996.

Mel S. Johnson (argued), Karine Moreno-Taxman, Office of the United States Atty., Milwaukee, WI, for plaintiff-appellee in No. 95-2651.

Robert E. Meldman (argued), Richard A. Petrie, Reinhart, Boerner, Vandeuren, Norrism & Rieselbach, Milwaukee, WI, for defendant-appellant in No. 95-2651.

Mel S. Johnson, Karine Moreno-Taxman (argued), Office of the United States Atty., Milwaukee, WI, for plaintiff-appellee in No. 95-2652.

Sherwin C. Peltin (argued), Michael G. Goller, Weiss, Berzowski, Brady & Donahue, Milwaukee, WI, for defendant-appellant in No. 95-2652.

Before POSNER, Chief Judge, and KANNE and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Pittman and Boyd, the sole shareholders of Bee Bus Line, Inc., a provider of school busing in Milwaukee, were convicted by a jury of filing false income tax returns and of related offenses (including evasion of corporate tax owed by Bee Bus Line) under the Internal Revenue Code. 26 U.S.C. §§ 7201, 7206. They were sentenced to 18 and 15 months in prison, respectively.

They had failed to report on the corporation's tax return several hundred thousand dollars in revenues from busing kids to and from a private school. Instead the money was deposited in Pittman's personal bank account and part of it at least was used to pay personal expenses of Pittman and Boyd. The principal argument on appeal is that the judge should have let the defendants place before the jury certain evidence bearing on the issue of their willfulness. We know from *Cheek v. United States,* 498 U.S. 192, 202, 111 S.Ct. 604, 610–11, 112 L.Ed.2d 617 (1991), that the defendants could not be convicted if they believed they were not filing a false return, however unreasonable their belief.

They wanted to testify that they believed that the Milwaukee public school system, a major customer, was hostile to their company and would jigger the system's request for bids in such a way as to prevent the company from bidding successfully. For example, if the school system wanted a bid on a service that would require 50 buses to provide, it would, because it knew that Bee Bus Line had only 50 buses, artificially inflate its requirements so that 100 buses were necessary. To defeat this wicked scheme the defendants used the revenue from the private school to buy buses secretly so that Bee Bus Line would have more buses than the Milwaukee public school system thought it had and therefore could bid for the artificially inflated service. The defendants dared not reveal the purchases of the additional buses, or even the revenue that enabled them to make the purchases, on Bee Bus Line's fi-

nancial statements because they believed that the Milwaukee public school system had access to all such records. Thus, as the lawyer for one of the defendants told the district judge, "the interest [of the defendants] was not in the taxes at all. The interest was in how do we best cope with the Milwaukee School Board?"

All this is fantastic in the extreme—especially the suggestion that by revealing the income from the private school the defendants would have revealed their purchase of the additional buses. But since some people have crazy beliefs and a crazy belief can be a defense to a charge of false filing, we can say neither that the defendants did not believe the story they wanted to spin to the jury nor that, if that *was* their belief, it is legally irrelevant because crazy. The district judge understood these points perfectly well but, even so, he ruled that the belief was irrelevant to the charges. If the defendants knew that they had to report on the books of their corporation the income that it had received from the private school, the fact that their motive in flouting this known duty was not to cheat the federal government but instead to confound a malicious public school board would be no more exculpatory than if they had wanted to donate the money they saved by evading taxes to Mother Theresa. *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam); *United States v. Rawlings,* 982 F.2d 590, 592 (D.C.Cir.1993); *United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir.1991).

At the oral argument of the appeal the defendants' lawyers redescribed their clients' belief in a way that succeeded at last in linking it to the issue of willfulness. The defendants did not believe they owed any taxes on their income from the private school, because that income was offset by various credits and deductions. They wanted to introduce the evidence of their motive in concealing that income—a motive unrelated to taxes because they did not think they owed any taxes—in order to negate any inference of a known duty to pay that might be

drawn from their action in diverting the income to a private bank account. This redescription does not get the defendants to first base with the false-filing count. They do not deny that their corporation was required to file an income tax return, and the duty to report one's income on one's income tax return is not cancelled by the fact that one may have credits or deductions that reduce one's income tax liability to zero. But the defendants were also convicted of *evading* taxes and if they did not know they owed taxes the conviction was improper. Insofar as an inference of knowledge might be drawn from their diversion of income to a private bank account, evidence of a motive for that diversion unrelated to taxes would bolster their defense that they were not willful. At least the evidence would be relevant, and the district judge excluded it on the ground that it was irrelevant. See *Cheek v. United States, supra,* 498 U.S. at 203, 111 S.Ct. at 611; *Watkins v. United States,* 287 F.2d 932 (1st Cir.1961).

The only difficulty with the defendants' argument is that it was not made either in their briefs (their counsel told us that the paragraph in which the argument was made had been edited out of their opening brief by mistake) or to the district judge when he sustained the government's objection to the evidence. If the error in excluding the evidence could be said to be plain, implying an error that both can be identified as such without elaborate factual inquiry and may have caused the conviction of an innocent person, *United States v. Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993); *United States v. Caputo,* 978 F.2d 972, 973–75 (7th Cir.1992), then we can forgive the waiver and correct the error even at this late date; but it is plain in neither sense. It is far from clear that there is any factual basis for the assertion that the defendants honestly believed they owed no taxes; and it is extraordinarily unlikely that a jury would have credited this fantastic theory had it been presented to them.

The defendants present several other grounds for reversal. The first is that the Jencks Act, 18 U.S.C. § 3500, required the disclosure to them of the entire investiga-

tive report of the internal revenue agent who prepared the case against them and recommended that they be prosecuted. The Act, so far as relevant here, requires the disclosure of any written statement, made by or signed or otherwise adopted or approved by a witness called by the government, that relates to the subject matter of the witness's testimony. §§ 3500(b), (e)(1). If there is no overlap between the statement and the testimony, the statement cannot be used to impeach the testimony and so disclosure of the statement is not required.

If as in this case the government claims that part of the witness's statement is unrelated to the witness's testimony, the district judge examines the statement in camera. Here after doing so the judge ruled that the government did not have to disclose the first 23 pages of the agent's report because they were just a summary of documents and other evidence that had already been turned over to the defendants. The judge distinguished *United States v. Cleveland*, 507 F.2d 731 (7th Cir.1974), where a similar report was ordered disclosed, on the ground that there the government had been proceeding under the net-worth method of proving tax evasion. That method required the agent not merely to identify income that had not been reported, as was the case here, but also to infer the taxpayer's income from his expenditures and assets.

■ We have read the 23 pages, and while they consist mainly of a summary of the evidence disclosed to the defendants (the evidence itself is listed in the remaining pages of the agent's report, which were turned over to the defendants), they also contain the agent's inferences or impressions (as in *Cleveland*) concerning such matters as the defendants' willfulness. The agent, however, did not testify about willfulness. He testified only about what the defendants did with the income of their corporation, which is to say deposited some of it in personal bank accounts and from there checked it out to pay personal expenses. As the only part of the agent's report that was not a mere summary of evidence already disclosed to the defendants did not relate to his testimony, it did not have to be disclosed. *Norinsberg Corp.*

*v. U.S. Dept. of Agriculture*, 47 F.3d 1224, 1229 (D.C.Cir.1995); *United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir.1994). The failure to disclose was in any event harmless, not only because there is no impeaching material in the 23 pages but also because the defendants do not point to anything in the agent's testimony with which they disagree and thus that they would want to impeach if they could.

■ The Internal Revenue Service is forbidden to issue a summons (the equivalent of a subpoena) to a taxpayer, seeking documents or other information, after the Treasury Department recommends to the Attorney General that a grand jury be asked to investigate the taxpayer for possible criminal violations of the Internal Revenue Code. 26 U.S.C. § 7602(c). Such summonses were issued to defendant Pittman, and to Bee Bus Line, after a grand jury investigation was opened of possible money laundering by the defendants. The question is whether the issuance of the summonses in these circumstances violated section 7602(c).

■ The only defendant objecting to the summonses is Boyd, and the summonses did not seek any of her own records. They sought corporate records that she had prepared and that deeply implicated her in criminal activity, and these records, produced in response to the summonses, were in fact used as evidence against her at the criminal trial. But at least so far as bears on this case, a third party can object to a summons only if he or she has some kind of legally protected interest in the documents sought by the summons. *Donaldson v. United States*, 400 U.S. 517, 530–31, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1971). Boyd did not, *United States v. Bass*, 784 F.2d 1282, 1287 n. 7 (5th Cir.1986)—unless, as held in *United States v. Genser*, 582 F.2d 292, 305–06 (3d Cir.1978); see also *Gluck v. United States*, 771 F.2d 750, 755 (3d Cir.1985), the taxpayer who is harmed by the government's violation of section 7602(c) has standing by virtue of that section to challenge the summons. We think *Genser* is right—the statute creates a procedural right in the taxpayer and one that he therefore should be entitled to enforce, even if he lacks a proprietary interest in the

documents in the possession of the person summoned and that person is willing to comply with the summons.

We must therefore consider the government's alternative argument that since money laundering and income tax evasion are distinct offenses, a criminal investigation of money laundering, even when as in this case it is conducted by the Internal Revenue Service, ought not preclude efforts to collect, through the usual civil means including administrative summonses, the taxes owed by the persons being investigated. The statute is broadly worded—"No summons may be issued ... with respect to any person if a Justice Department referral is in effect with respect to such person," 26 U.S.C. § 7602(c)(1)—and, given the ease with which the same conduct can be charged under different provisions of the Internal Revenue Code, the use of the word "person" rather than "offense" may be deliberate, though we cannot find any authority on the question. The statute itself, however, makes exceptions for cases in which the summons is sought for a different taxable year or with respect to a tax imposed by a different chapter, § 7602(c)(3), and the second exception is applicable here. The money-laundering charge that the Internal Revenue Service referred to the Department of Justice arises not only under a different chapter, but under an entirely different title of the United States Code. 31 U.S.C. § 5324. A charge that arises under a different title necessarily arises under a different chapter.

The last ground of appeal—that one of the counts was barred by the statute of limitations—was waived in the district court, *United States v. Vebeliunas*, 76 F.3d 1283, 1292–93 (2d Cir.1996), and if there was an error, as we greatly doubt, it was not plain.

AFFIRMED.