John GATTO

v.

**UNITED STATES of America**

**Civil Action No. 96–4993.**
**Criminal No. 92–133–2.**

United States District Court,
E.D. Pennsylvania.

Aug. 11, 1997.

Order Denying Motion
for Reconsideration
Dec. 11, 1997.

John A. Gatto, Elkton, OH, Pro Se.

Shari E. Lewis, U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I. BACKGROUND

Petitioner was charged in eight counts of a 116 count indictment against multiple defendants with the manufacture and distribution of multi-kilogram quantities of methamphetamine and conspiring to do so over a two-year period. The indictment charges that petitioner and codefendant Lawrence Pirollo were partners and organizers, supervisors or managers in a substantial drug trafficking operation. Pursuant to an agreement with the government, petitioner pled guilty on November 4, 1992 to one count charging that he engaged in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. The government agreed to a dismissal of all other charges against petitioner and not to prosecute him further for any offenses related to the CCE activity prior to the agreement except any murder, attempted murder or crime of physical violence. Petitioner was sentenced to a period of 240 months of imprisonment, the minimum sentence mandated by statute, to be followed by five years of supervised release.

Presently before the court is petitioner's petition to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner asserts that his retained trial counsel provided ineffective assistance, his guilty plea was involuntary and he is entitled to a downward departure pursuant to U.S.S.G. § 5K2.12.

The court has reviewed the petition and accompanying submissions as well as petitioner's addenda of March 3 and March 20, 1997, the government's response of May 27, 1997, pertinent court records in the criminal case against petitioner and his codefendants and in the related case against George

Williams. For the reasons that follow, the petition will be denied.

## II. DISCUSSION

### A. Voluntariness of Petitioner's Guilty Plea

Petitioner states that he involuntarily pled guilty to a crime he had not committed. Petitioner contends that the government's willingness to enter into a plea agreement with him only on condition that codefendants Anthony Gatto and Lawrence Pirollo also plead guilty combined with a government promise of lenient treatment for his stepfather rendered petitioner's plea involuntary.

The government acknowledges that its willingness to enter plea agreements with petitioner, Lawrence Pirollo and Anthony Gatto was contingent upon all three pleading guilty. One codefendant had absconded and the remaining 19 codefendants had all pled guilty. The government had fully prepared and was ready to proceed when on the proverbial eve of trial Messrs. Gatto and Pirollo decided to seek plea bargains. Petitioner's stepfather, Ronald Serchia, was a defendant in an unrelated drug case which petitioner claims the government promised to drop. On a similar claim by petitioner's brother Anthony, the court credited the testimony of the prosecuting attorneys in this case and found that the government had made so such promise.[1]

### 1. Procedural Default

■ The government contends that this claim is barred because petitioner failed to raise it on direct appeal and has failed to make the requisite showing of cause and actual prejudice. Petitioner asserts that his failure to raise this issue on appeal was not his "error" but the result of his appellate counsel's advice to pursue any challenge to the voluntariness of his plea in a § 2255 petition. Petitioner also states that he was told by subsequent appellate counsel that "an appeal after a guilty plea is very limited" and

"[t]he only claims that can be raised are those that are clear on the face of the record." Petitioner asserts that this advice constitutes an "external impediment" which prevented him from raising this issue on appeal.

■ A petitioner seeking relief from an alleged error or defect in connection with his sentence which was not raised on direct appeal must satisfy the cause and prejudice standard articulated in *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). *United States v. Essig*, 10 F.3d 968, 979 (3d Cir.1993).[2] Ineffectiveness of counsel will constitute "cause" for a petitioner's failure to challenge the voluntariness of his guilty plea on direct appeal only if it is an independent constitutional violation. *Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir.), *cert. denied*, 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default," however, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 486–87, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ Petitioner must also show that the alleged error resulted in actual prejudice, a showing even more stringent than that required to establish plain error on appeal. *Frady*, 456 U.S. at 166, 168. A petitioner must show more than "a *possibility* of prejudice," but rather must demonstrate that any error worked to his "*actual* and substantial disadvantage." *Id.* at 170 (emphasis in original).

As the government notes, petitioner never contended on direct appeal that his decision to plead guilty was involuntary. Petitioner

---

1. *See U.S. v. Gatto*, 1994 WL 570821 (E.D.Pa. Oct.19, 1994). The case against Mr. Serchia never did proceed to trial. Trial was deferred because of his health problems and the case was dismissed upon his death.

2. Petitioner is not required to show "cause and prejudice" for a failure to raise an ineffective assistance of counsel claim on direct appeal. *United States v. DeRewal*, 10 F.3d 100, 104–05 (3d Cir.1993), *cert. denied*, 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994).

correctly cites *Murray* for the proposition that a petitioner can establish cause by showing that some "objective factor" prevented him from satisfying an applicable procedural requirement. *See Murray*, 477 U.S. at 488. Petitioner fails to note, however, that such an objective factor must be one that is "external to the defense" such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or "that some interference by officials made compliance impracticable." *Id.* (citations and internal quotations omitted).

Petitioner has failed to demonstrate the existence of such an "objective factor." He has failed to establish cause for his failure to raise this claim on direct appeal or to make the requisite showing of prejudice.

### 2. *Merits*

■ To set aside a guilty plea under § 2255, a petitioner must show that the plea hearing was tainted by " 'a fundamental defect which inherently results in a complete miscarriage of justice' " or " 'an omission inconsistent with the rudimentary demands of fair procedure .' " *United States v. Farley*, 72 F.3d 158, 162 (D.C.Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Collateral relief under § 2255 is not available merely for a failure to comply with the formal requirements of Fed.R.Crim.P. 11. *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

■ The government contends that, even assuming petitioner's claim is not procedurally barred, its failure to inform the court that its willingness to enter into a plea bargain with petitioner was contingent upon the two remaining codefendants also pleading guilty is not jurisdictional or of constitutional magnitude. The government further contends that, even if its failure amounted to a violation of Rule 11, petitioner has not demonstrated that this resulted in "a complete miscarriage of justice" or that the guilty plea hearing was "inconsistent with the rudimentary demands of fair procedure." Petitioner contends that his counsel's advice to "admit to the facts that established guilt" amounted to a due process violation because counsel knew petitioner maintained his innocence.

Petitioner has not demonstrated that his guilty plea was involuntary, that his plea hearing was fundamentally unfair or that any defect may have resulted in the conviction of an innocent person or a complete miscarriage of justice.

■ Package plea bargains or the offer of lenient treatment for some third-party are not constitutionally impermissible. *See United States v. Clements*, 992 F.2d 417, 419 (2d Cir.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 316, 126 L.Ed.2d 262 (1993); *United States v. Seligsohn*, 981 F.2d 1418, 1426 (3d Cir.1992); *United States v. Pollard*, 959 F.2d 1011, 1020–21 (D.C.Cir.), *cert. denied*, 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992); *United States v. Marquez*, 909 F.2d 738, 741–42 (2d Cir.1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *Politte v. United States*, 852 F.2d 924, 930–31 (7th Cir.1988); *United States v. Wheat*, 813 F.2d 1399, 1405 (9th Cir.1987), *aff'd*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Where a handful of remaining defendants in a broad conspiracy case decide to explore the prospect of plea bargains only after the government has amassed all of its evidence and has fully prepared to proceed, it is not unreasonable for the government to eschew any arrangement which would not obviate the need for a trial.

■ An offer to execute plea bargains on an "all or none" basis is not a "promise." Whether it is a "condition" of each plea agreement or merely a negotiating position and a condition precedent to an agreement may be fairly debated. In any event, the better practice is to alert the court to the package feature of a plea bargain. *See Clements*, 992 F.2d at 419 ("preferred practice" is to advise court of requirement that all defendants or none plead guilty). A failure to so notify the court, however, does not entitle a defendant at any subsequent time to withdraw his guilty plea. Rather, the focus remains on whether a particular plea was voluntary. *See Marquez*, 909 F.2d at 742; *United States v. Daniels*, 821 F.2d 76, 79–80 (1st Cir.1987)

 Presumably, the government offers some benefit or inducement with any plea bargain. That one pleads guilty to obtain such a benefit does not render the plea involuntary. Invariably, almost any criminal defendant will feel some pressure when having to weigh the benefits of pleading guilty and the risks of proceeding to trial. If such inherent pressure which results from the offer of a plea bargain constituted improper coercion, virtually any guilty plea pursuant to a plea agreement could be upset at the whim of the defendant. That a decision to plead guilty is motivated, in whole or in part, by a desire to help someone else no more renders a plea involuntary than one motivated solely by a less altruistic desire only to help oneself. *Marquez,* 909 F.2d at 742.

 Petitioner's plea is facially voluntary and valid. *See Zilich v. Reid,* 36 F.3d 317, 320–21 (3d Cir.1994). Petitioner represented that he read the plea agreement, reviewed every part of it with his attorney and "freely and voluntarily agreed to it." Petitioner stated under oath that he understood the charges against him and the rights he was waiving, that there was a factual basis for his guilty plea and that he was not changing his plea because of any threat, coercion or undisclosed promise.

Petitioner has not made the type of specific and credible presentation to demonstrate coercion, *id.,* which might overcome the clear appearance of voluntariness from his presumptively truthful responses at his plea hearing. *See Farley,* 72 F.3d at 163–64; *Clements,* 992 F.2d at 418–20; *United States v. Morrow,* 914 F.2d 608, 613–14 (4th Cir. 1990). A defendant's "declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). *See also United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992) (claim of innocence contradicted by unequivocal statements at plea proceeding not credible); *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir.1988) (defendant bears "heavy burden" to show

statements made under oath at plea colloquy were false); *United States v. McKoy,* 645 F.2d 1037, 1039 (1981) (defendant must offer tenable explanation for about-face on acknowledgment of guilt or guilty pleas would be reversible at whim of defendant).

**B. *Downward Departure Pursuant to U.S.S.G. § 5K2.12***

 Petitioner contends that he is entitled to a downward departure pursuant to U.S.S.G. § 5K2.12 which provides in pertinent part:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.

As the government notes, it is doubtful that such a claim is cognizable in a § 2255 petition or otherwise given petitioner's failure to raise it on direct appeal. *See United States v. Faubion,* 19 F.3d 226, 232 (5th Cir.1994) (attack on court's upward departure not cognizable in § 2255 petition); *Rivera v. United States,* 893 F.Supp. 1238, 1243 (S.D.N.Y.1995) (contention that defendant was entitled to downward departure not cognizable under § 2255).[3]

Moreover, the court is without power to grant such a departure. Petitioner's sentence was not imposed pursuant to the guidelines. He received the minimum sentence required by statute. "[Section] 5K2.12 does not authorize departure below a statutorily required minimum sentence." *United States v. Miller,* 71 F.3d 813, 817 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 123, 136 L.Ed.2d 73 (1996). *See also Melendez v. United States,* 518 U.S. 120, 116 S.Ct. 2057, 2062–63, 135 L.Ed.2d 427 (1996) (§ 5K1.1 motion for downward departure from applicable guidelines range does not authorize court to depart from statutory minimum sentence absent government motion pursuant to 18 U.S.C. § 3553(e)); *United States v. Valente,* 961 F.2d 133, 135 (9th Cir.1992) (§§ 5K2.0–5K2.15 address departures from

**3.** Although petitioner contends his counsel was ineffective for a variety of reasons, he does not appear to assert that counsel was ineffective for failing to press for a downward departure. In

any event, any such failure could not have been professionally unreasonable or prejudicial since the court had no legal authority to grant a downward departure.

guidelines and not statutory mandatory minimum sentences).

Petitioner also cites his "extraordinary rehabilitative effort" in support of his claim for a § 5K2.12 departure. Petitioner notes that following his arrest he "was no longer involved in any illegal activity" and "found gainful employment." He further notes hat even "before he was involved in the instant offense he gave of himself freely to the community" and participated in community services for "nothing more than the satisfaction of helping others." Petitioner also points out that he has been a model prisoner. He participated in educational and religious programs, tutored illiterate inmates, worked for an inmate organization and maintained a clear conduct record.

■■■■■ Any rehabilitative effort of petitioner, of course, would not be relevant to a claim of coercion or duress and thus could not justify a § 5K2.12 departure. Also, post-sentence rehabilitative efforts clearly do not provide a legal basis for a sentencing departure. In any event, accepting as true petitioner's claim of rehabilitation and assuming it were proffered in support of a § 5K2.0 departure, the result is the same as § 5K2.0 also does not permit a court to depart from a statutory minimum sentence. *See United States v. Polanco*, 53 F.3d 893, 897 (8th Cir.1995) (§ 5K2.0 does not permit departure from statutory minimum sentence), *cert. denied*, 518 U.S. 1021, 116 S.Ct. 2555, 135 L.Ed.2d 1073 (1996); *United States v. Brigham*, 977 F.2d 317, 320 (7th Cir.1992) (same); *Valente, supra. United States v. Griffiths*, 954 F.Supp. 738 (D.Vt.1997), relied on by petitioner, is not to the contrary. *Griffiths* involved a § 5K2.0 departure from the applicable guidelines range, not a statutory minimum sentence. *See id.* at 739.[4]

## C. *Ineffective Assistance of Counsel*

■■■■ Effective assistance of counsel means adequate representation by an attorney of reasonable competence. *Government of the Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir.1984). To show ineffective assistance of counsel, it must appear that a defendant was prejudiced by the performance of counsel which was deficient and unreasonable under prevailing professional standards. *Strickland v. Washington*, 466 U.S. 668, 686–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989). Counsel's conduct must have so undermined the proper functioning of the adversarial process that the result of the pertinent proceedings cannot be accepted as reliable, fair and just. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Strickland*, 466 U.S. at 686; *United States v. Nino*, 878 F.2d 101, 103 (3d Cir.1989).

■■■■ To show prejudice when challenging a guilty plea on the ground of ineffective assistance of counsel, a petitioner must show that there is a reasonable probability that but for errors of counsel, he would not have pled guilty and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for the reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* What investigatory decisions are reasonable necessarily depends on a defendant's strategic choices and the information provided by him. *Id.*

### 1. *Contingent Nature of Plea Offer and Advice to Plead Guilty*

■■■■ Petitioner contends that counsel was ineffective for failing to disclose to the court that the government's plea offer was contingent on all three remaining defendants pleading guilty and for advising petitioner to plead guilty under such circumstances. Petitioner contends that but for these alleged deficiencies, he would not have pled guilty.

■■■■ Whether or not disclosed by a defendant's counsel, a guilty plea is not involun-

---

4. Petitioner's claims of duress not amounting to a complete defense and of exceptional rehabilita-

tion are not altogether consistent with his protestation of innocence.

tary whenever it is entered pursuant to a package deal. Petitioner does not claim that his attorney had information about the plea bargain which was unknown to petitioner. Petitioner does not explain how the disclosure by counsel of information already known to petitioner would have resulted in a decision by him to proceed to trial. Whether in response to an "all or none" offer or otherwise, there is no showing that counsel acted unreasonably and deficiently in advising petitioner to plead guilty.

According to a submission by petitioner, counsel had "several thousand pages of material" including the memorandum of Mr. Williams' debriefing and "voluminous transcripts of the wiretaps and surveillance logs." Many codefendants pled guilty pursuant to agreements which obligated them to testify for the government against petitioner and his remaining codefendants. George Williams, a cooperating defendant in a related case, was prepared to testify that he was recruited by petitioner and Mr. Pirollo to manufacture kilogram quantities of pure methamphetamine for subsequent cutting and distribution. The government also was prepared to present the testimony of law enforcement officers who conducted physical surveillance of the conspirators and who seized 12½ pounds of methamphetamine linked to petitioner as well as drug records from a clandestine laboratory detailing the manufacture of at least 15 pounds of pure methamphetamine by Mr. Williams for petitioner and Mr. Pirollo. The government also had evidence of over 300 intercepted conversations which, in conjunction with simultaneous physical and video surveillance, substantiated the alleged drug distribution network encompassing manufacture through retail street sales.

Petitioner has not shown that he was prejudiced from his counsel's failure to notify the court of the contingent nature of the government's plea offer or his advice to petitioner to plead guilty. It does not appear from petitioner's submissions and the pertinent record that there is any reasonable probability he would have proceeded to trial but for coun-

sel's failure to advise the court that petitioner's plea was "wired" to pleas of codefendants. *See Farley,* 72 F.3d at 164. Counsel's advice to petitioner to plead guilty was patently not professionally deficient and unreasonable in view of the government's evidence, the posture of cooperating codefendants at the time and the practical choices facing petitioner as a result.

### 2. *Failure to Interview Potential Witnesses*

While he acknowledges that his counsel did obtain witness statements during discovery, petitioner contends that counsel should have interviewed three other individuals whose testimony could have supported a claim that petitioner committed the offense to which he pled guilty because of duress and coercion resulting from threats and intimidation by Nicholas D'Amato to induce the repayment of money owed to him by petitioner. Petitioner claims that he was unable to repay a $90,000 "business debt" he owed to Mr. D'Amato without the funds petitioner generated by drug trafficking.[5]

It was not unreasonable for counsel to decline to interview such individuals and petitioner cannot demonstrate any prejudice resulting from that decision. The proffered evidence was not remotely adequate to establish a defense of duress and coercion.

To establish this defense, a defendant must prove an *immediate* threat of death or serious bodily injury, a well-grounded fear that the threat would be carried out if he did not commit the crime in question *and* the absence of any reasonable opportunity to escape the threatened harm without committing the offense. There must be a *direct* causal relationship between the criminal act and avoidance of the threatened impending harm. *United States v. Paolello,* 951 F.2d 537, 540 (3d Cir.1991); *United States v. Santos,* 932 F.2d 244, 249 (3d Cir. 1991), *cert. denied,* 502 U.S. 985, 112 S.Ct. 592, 116 L.Ed.2d 617 (1991). The threat of harm must be so immediate as to preclude both the opportunity to escape and to seek assistance from law enforcement. *United*

---

5. Mr. D'Amato was identified by George Williams as the "chief financier" of another methamphetamine manufacturing and distribu- tion organization from which Mr. Williams agreed to divert chemicals to manufacture drugs for petitioner's enterprise.

**630**

States v. Rawlings, 982 F.2d 590, 593 (D.C.Cir.1993); United States v. Esposito, 834 F.2d 272, 276 (2d Cir.1987). There must be no reasonable legal alternative to committing the offense. United States v. Bailey, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

Petitioner has failed to point to any evidence provided to counsel of such a specific and immediate threat. Petitioner has pointed to no evidence provided to counsel that he sought the protection of law enforcement or that he could not do so before engaging in drug trafficking, let alone for the ensuing two-year period before his apprehension by authorities. The information proffered by petitioner would not have established a viable defense. See United States v. Miller, 59 F.3d 417, 422 (3d Cir.1995) (court properly barred duress defense premised on threats never related to law enforcement officials despite opportunity to do so); United States v. Bakhtiari, 913 F.2d 1053, 1057–58 (2d Cir.1990) (court properly precluded defendant from presenting duress defense based on threats absent showing of reasonable steps to alert authorities), cert denied sub nom. Bakhtiari v. United States, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

■ Petitioner claims his counsel was also ineffective for failing to interview several witnesses who could have testified to petitioner's good character. There is no assertion, however, that petitioner would not have pled guilty had character witnesses been recruited or subpoenaed and, in view of the substantive evidence, a decision to proceed to trial based on the presence of several character witnesses would defy comprehension.

■ Petitioner further claims that his counsel's failure to interview his codefendants constituted ineffective assistance because some of these individuals would have testified that petitioner did not organize, manage or supervise them, thus undercutting the government's ability to establish that he acted in concert with at least five others with respect to whom he occupied a management position, as required to prove a violation of 21 U.S.C. § 848.[6] Petitioner submits declarations of Anthony Gatto, Angelo Fugarino, Frank Baldino and Bernard Centrella that they were never employed, supervised, managed or organized by petitioner.

These declarations long post-date petitioner's plea and are directly contradicted by petitioner's sworn admissions at his plea hearing as well as statements of some of the declarants in connection with their own guilty pleas. Petitioner acknowledged under oath that he had "organized and then supervised or managed the activities of more than five other people, including Angelo Fugarino, Asa Blake, Phil Whelan, Frank Baldino, Joseph Fugarino and Bernard Centrella." When pleading guilty, Anthony Gatto stated that he received quantities of methamphetamine from petitioner and Larry Pirollo to adulterate or "cut" and then return to them. In connection with his guilty plea, Frank Baldino acknowledged that he stored methamphetamine for petitioner and Mr. Pirollo and acted at their direction. Petitioner also submits an undated declaration of Lawrence Pirollo that he did not organize, manage or supervise anyone in concert with petitioner or anyone else. This is flatly contradicted by his sworn statements at his guilty plea hearing, and by admissions of Angelo Fugarino, Frank Baldino and other codefendants in connection with their guilty pleas.[7] These declarants give no tenable explanation for their contradiction of the presumptively honest statements presented to the court with their own guilty pleas. See Blackledge, 431 U.S. at 73–74; Gonzalez, 970 F.2d at 1100; Rogers, 848 F.2d at 168; McKoy, 645 F.2d at 1039.

Moreover, there is no showing that these codefendants were willing on November 4, 1992 to repudiate and forfeit the benefits of their plea agreements to testify for petitioner. Angelo Fugarino and Frank Baldino, among others, promised to cooperate with and testify for the government and benefit-

---

6. Petitioner does not deny that he was involved in a continuing series of drug transactions from which he derived substantial income. See 21 U.S.C. § 848(c).

7. Mr. Pirollo, who is incarcerated with petitioner at F.C.I. Allenwood, has filed a similar § 2255 petition with language virtually identical to that in petitioner's filing.

ted from government motions pursuant to § 3553(e) and § 5K1.1.

Even assuming their attorneys would have acceded to requests for interviews, counsel's decision not to seek interviews of represented codefendants who agreed to cooperate against the remaining defendants was not unreasonable.

### 3. Failure to Raise or Properly Pursue Certain Issues

■ Petitioner contends that counsel should have obtained a voice exemplar from him to compare with the voices on intercepted conversations recorded by the government because his voice is similar to and might have been mistaken for that of his brother and codefendant, Anthony Gatto. Petitioner does not aver that he related this information to counsel at the time. Petitioner also contends that counsel should have analyzed the recordings of intercepted conversations in which his voice is heard for authenticity, editing or tampering.[8]

Petitioner does not refute counsel's statements that he reviewed wiretap transcripts with petitioner, compared them to contemporaneous surveillance records and relied on petitioner's confirmation that they conformed with his recollection of the pertinent conversations. Petitioner suggests only that his recollection of how incriminating these conversations may have been differs from the assessment of counsel. This does not evince professionally deficient or unreasonable conduct.[9]

Petitioner's speculation that his voice could have been confused with that of his brother in one or more of the intercepted conversations does not establish prejudice. There is no contention that in the face of other evidence, petitioner would not have pled guilty if attribution of some of the pertinent recorded statements could have been shifted to a codefendant who averred in his own plea colloquy that he received from, adulterated for and returned to petitioner quantities of methamphetamine during the period covered by the electronic and physical surveillance of the conspirators.

Similarly, there is no showing that a decision by counsel not to challenge the authenticity, accuracy or integrity of the recordings of petitioner's intercepted conversations was unreasonable or resulted in any prejudice. The government filed a motion to admit the recordings and averred that it could satisfy each of the so-called *Starks* factors. The court has observed many capable defense attorneys forego a *Starks* challenge upon such averments by the prosecuting attorney. Further, petitioner does not assert or make any showing that these averments were untrue and that any recording was faked, inaccurate or altered.

Petitioner also contends that counsel should have challenged the "necessity" finding for an extension of the wiretap. Petitioner does not, however, contend or show that the authorizing judge erred in finding necessity and it appears that the extension did help to substantiate the scope of the drug

**8.** Petitioner relies on *United States v. Baynes*, 687 F.2d 659 (3d Cir.1982) for his contention that "[t]he mere possibility that investigation of the exemplar might not have produced nothing of consequence[sic] for the defense cannot serve as a justification for the failure to perform such an investigation in the first place." The government correctly notes that petitioner's reliance on *Baynes*, a pre-*Strickland* decision, is misplaced. The *Baynes* Court held that where the tape recording of a twelve-word statement was the only evidence against a defendant who repeatedly asserted the voice was not his and counsel was informed by codefendant it was his voice, counsel's failure to compare an exemplar of the defendant's voice with that on the recording constituted ineffective assistance. These compelling factors are not present in this case. Moreover, the Third Circuit has since recognized that the prejudice standard applied in *Baynes* (i.e, not

harmless beyond a reasonable doubt) is no longer valid in light of *Strickland*. *See Lewis v. Mazurkiewicz*, 915 F.2d 106, 114 n. 5 (3d Cir. 1990); *Morrison v. Kimmelman*, 752 F.2d 918, 922–23 (3d Cir.1985), *aff'd*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). *See also United States v. Ruddock*, 1995 WL 717379, *4 (E.D.Pa. Dec.1, 1995) (speculation of possible prejudice from counsel's failure to investigate or probe does not substitute for showing of reasonable probability).

**9.** As the government notes, petitioner's counsel did move to suppress a voice identification of petitioner made by law enforcement officers, suggesting that counsel was able and willing to challenge voice identification testimony where there was some arguable ground for doing so.

enterprise and the roles of various participants.[10]

■■■ Petitioner also challenges counsel's failure to file a motion in limine to preclude evidence of other crimes on the ground that it was unduly prejudicial. Petitioner fails to note, however, that this issue was presented to the court by the government which filed a pretrial Notice of Intent to Introduce Evidence of Other Crimes. This evidence consisted of testimony of George Williams about the evolution of his relationship with petitioner which would reveal prior similar methamphetamine trafficking by each and references to sports betting in recorded conversations intertwined with discussion regarding drug activity. The court ruled that it would defer a decision on the admissibility of this evidence until the time of trial when it could be better evaluated in context. It was thus evident that petitioner's counsel would have an opportunity to argue any objection he wished before any such evidence would be admitted. At his plea hearing, petitioner acknowledged his understanding of his right to object to evidence offered by the government against him and to challenge the manner in which evidence was obtained.

In any event, counsel would not have been unreasonable in concluding that the proffered evidence was admissible consistent with Fed. R.Evid. 404(b) and 403. Moreover, petitioner does not and without straining credulity could not assert that if assured the testimony of Mr. Williams would encompass only the multi-kilogram quantities of pure methamphetamine manufactured for petitioner during the period of the conspiracy charged in the indictment and that references to sports betting could be excised from drug related conversations, petitioner would have elected to proceed to trial.

■■■ Petitioner further contends that counsel did not properly argue his motion to compel the government to produce for interview four persons in the witness protection program. The court denied this motion based on the statements of these individuals

that they had not related exculpatory information about petitioner as alleged and "do not consent to be interviewed by counsel for the defendant." Petitioner now claims that counsel should have presented evidence from petitioner's mother that one of these persons indicated in two telephone conversations in April 1992 that the four were willing to testify on petitioner's behalf. There is no showing, however, that any of the four had consented to be interviewed or did in fact have relevant exculpatory testimony to give.

The transcripts of the two conversations of petitioner's mother with one of the protected witnesses on which petitioner relies show at most that these individuals were willing to testify that Nicholas D'Amato was the "kingpin" behind the drug operation. This, of course, is not inconsistent with petitioner being an organizer, manager or supervisor.

■■■ "A given network may have many persons in authority. Thus, the defendant need not be the dominant organizer or manager of the enterprise; he need only occupy *some* managerial position with respect to five or more persons." *United States v. Jenkins*, 904 F.2d 549, 553 (10th Cir.1990). Such persons need not be "under the direct and immediate control or supervision of defendant." *United States v. Ricks*, 882 F.2d 885, 891 (4th Cir.1989). A defendant need only exercise "some type of influence" over such persons. *United States v. Rogers*, 89 F.3d 1326, 1334–35 (7th Cir.1996). Moreover, a defendant's relationship with five others need not exist at the same time and may be separate and distinct. *United States v.. English*, 925 F.2d 154, 157 (6th Cir.1991). A principal in a criminal enterprise cannot avert CCE liability by exercising authority or influence through a partner or lieutenant or otherwise by limiting his direct contact to fewer than five participants. *Ricks*, 882 F.2d at 891. Having others store, cut or transport drugs can satisfy the managerial requirement. *United States v. Chalkias*, 971 F.2d 1206, 1214 (6th Cir.1992), *cert. denied*, 506 U.S. 926, 113 S.Ct. 351, 121

---

**10.** As the government notes, petitioner's counsel did move to suppress the wiretap evidence on another ground regarding the period of interception permitted by the authorizing judge which again suggests counsel was able and willing to assert colorable legal arguments on behalf of petitioner.

L.Ed.2d 265 (1992); *English*, 925 F.2d at 157.

Another of these individuals in the witness protection program confirms that they did not agree to be interviewed by petitioner's counsel because "at that time none of us thought we could possibly help you ... we did not even think of coercion until you brought it to our attention." It thus appears that at some point petitioner thought these individuals might support a claim of duress and coercion by Mr. D'Amato. As noted, however, petitioner's allegations in this regard do not remotely establish a duress and coercion defense.

There is absolutely no showing that the four protected witnesses had any pertinent admissible exculpatory testimony to give or that petitioner was prejudiced by any failure of counsel to push more aggressively for their pretrial production. At his plea hearing, petitioner acknowledged that he understood his right to have any witnesses subpoenaed for trial and also stated under oath that he was satisfied with his attorney's representation and advice.[11]

#### 4. *Failure to Provide Case File*

■ Petitioner finally asserts that he has been prejudiced in pursuing collateral relief by counsel's refusal to release his case file to petitioner "as there might be other issues or documentation he could discover to support a claim of ineffective assistance of counsel."

Petitioner, however, also submits correspondence from counsel which shows that he offered to permit anyone petitioner designated to review the file and copy any portion of it. It appears that counsel believed the original file should be preserved in tact in his possession because it "may become relevant to a future court proceeding," and that he could not absorb the expense of copying all of the thousands of pages comprising the file. Counsel's position was not unreasonable.

■ In any event, as the government contends, such action cannot constitute ineffective assistance for purposes of this action. The conduct of which petitioner complains took place *after* his plea and could not have affected his decision to plead guilty.[12]

### III. CONCLUSION

Even assuming petitioner's claim that his guilty plea was involuntary is cognizable in this action, he not shown that it was. Petitioner has not shown that he received ineffective assistance of counsel. Petitioner has not made a showing of duress and coercion necessary to qualify for a downward departure pursuant to § 5K2.12 and, in the absence of a § 3553(e) motion of the government, the court is powerless to consider such a sentencing departure.

Petitioner and persons writing at his behest have asked for "leniency." Petitioner makes a meaningful showing of "repentance for his actions" and "rehabilitation." Such request and showing, however, are misdirected. As petitioner acknowledged, Congress has mandated the sentence he received. The court imposed the minimum prison term allowed by law. If the law permitted resentencing for post-conviction rehabilitation or to grant leniency despite a statutory required sentence, the court would be more than willing to consider such action in this case as well as others. Courts, however, may not indulge themselves. They must follow and apply the law.

The court has given petitioner an opportunity to amplify and expand his submissions. The court has carefully reviewed those submissions and various pertinent court records. Petitioner has simply not made a showing

---

11. Virtually all of the omissions of counsel to which petitioner now objects relate to things well known to him at the time of his plea and affirmation of satisfaction with his attorney.

12. Petitioner has no constitutional right to counsel in the pursuit of post-conviction relief and thus there can be no deprivation of effective assistance of counsel in that context. *See Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct.

1300, 71 L.Ed.2d 475 (1982) (there can be no ineffective assistance of counsel where petitioner had no constitutional right to counsel to pursue review). *See also Pennsylvania v. Finley*, 481 U.S. 551, 557–58, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no constitutional right to counsel when seeking post-conviction relief); *Oliver*, 961 F.2d at 1343 (no constitutional right to counsel for § 2255 proceeding).

which would entitle him to the legal relief he requests.

Accordingly, petitioner's § 2255 petition will be denied. An appropriate order will be entered.

### ORDER

**AND NOW,** this 11th day of August, 1997, upon consideration of petitioner's petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and the government's response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said petition is **DENIED** and the above action is **DISMISSED.**

### MEMORANDUM ORDER

Petitioner was charged in eight counts of a 116 count indictment against multiple defendants with the manufacture and distribution of multi-kilogram quantities of methamphetamine and conspiring to do so over a two-year period. The indictment charges that petitioner and codefendant Lawrence Pirollo were partners and organizers, supervisors or managers in a substantial drug trafficking operation. Pursuant to an agreement with the government, petitioner pled guilty on November 4, 1992 to one count charging that he engaged in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848. The government agreed to a dismissal of all other charges against petitioner and not to prosecute him further for any offenses related to the CCE activity prior to the agreement except any murder, attempted murder or crime of physical violence. Petitioner was sentenced to a period of 240 months of imprisonment, the minimum sentence mandated by statute, to be followed by five years of supervised release.

On August 11, 1997, the court denied petitioner's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Presently before the court is petitioner's Motion for Reconsideration. The motion, however, does not actually appear to be one for reconsideration of the numerous issues presented by petitioner in his petition and addressed by the court in its 26 page memorandum opinion. Rather, in this motion petitioner questions the constitutionality

of mandatory sentencing requirements and the fairness of the criminal justice system, particularly certain perceived prosecutorial practices.

As best as the court can discern, petitioner now argues essentially that the statute mandating minimum sentences in drug cases violates his Fifth Amendment right to due process insofar as it effectively precludes a downward departure for extraordinary rehabilitative efforts, which petitioner contends and the court assumes he has made, because this is "unreasonable, arbitrary and capricious." He also argues that 18 U.S.C. § 3553(f), the so-called safety valve provision, is similarly "unconstitutional" insofar as it precludes a departure for a defendant who has made extraordinary rehabilitative efforts but was a manager or supervisor while permitting such a departure for "similarly situated" defendants for whom a mandatory minimum sentence was not triggered. Petitioner also suggests that it is unfair that worse drug offenders have averted mandatory minimum sentences pursuant to § 3553(e) motions by providing substantial assistance to the government which he did not do only because of fear for his safety and that of his family.

The short answer is that even if a particular judge in a given case would impose a lesser sentence if free to do so, mandatory minimum sentences are reasonably related to the objectives of deterring and penalizing criminal conduct deemed particularly egregious and Congress did not act arbitrarily or capriciously in requiring them, petitioner is by definition not "similarly situated" to other criminal managers or participants in continuing criminal enterprises who are not subject to a statutory mandatory minimum sentence; and, while § 5K1.1 and § 3553(e) give considerable discretion to prosecutors, there is a significant practical need to obtain assistance from knowledgeable persons, often offenders themselves, effectively to investigate crime and prosecute criminals.

One would hope and assume that the government does not ordinarily seek to benefit a more culpable offender at the expense of his less culpable associates. As a practical mat-

ter, however, it is often those closer to the top or center of a criminal enterprise who have the type of extensive information required by the government. The reality is that where the prosecutor's door is open, someone will be the first to enter. That petitioner declined to cooperate out of fear of his cohorts may be understandable but it is not unusual. Indeed, this is one reason why the law provides a significant incentive to offenders to assist the government in identifying and prosecuting others engaged in crime.

Petitioner has not presented, or indeed offered, any basis for the court to reconsider its decision of August 11, 1997. Petitioner received the minimum prison sentence mandated by statute. Congress has made no exception for offenders who have undertaken exceptional rehabilitative efforts. Petitioner has not demonstrated that any of the applicable statutory provisions are unconstitutional.

Because petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability has been issued in this action which was initiated after the effective date of the AEDPA. *See* 28 U.S.C. § 2253(c)(1)(B); *U.S. v. Skandier*, 125 F.3d 178, 180 (3d Cir.1997).

**ACCORDINGLY**, this 11th day of December, 1997, IT IS **HEREBY ORDERED** that petitioner's Motion for Reconsideration is **DENIED**.